Argued and submitted August 10, 2004, reversed November 9, 2005 ·

SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 503,
OREGON PUBLIC EMPLOYEES UNION,
*Respondent,*

*v.*

STATE OF OREGON,
DEPARTMENT OF ADMINISTRATIVE SERVICES,
Home Care Commission
and Department of Human Services,
*Petitioners.*

UP-60-02; A122094

123 P3d 300

Richard D. Wasserman, Attorney-in-Charge, Civil/ Administrative Appeals Unit, argued the cause for petitioners. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Elizabeth Baker argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

The Service Employees International Union Local 503 (SEIU) filed an unfair labor practices complaint with the Employment Relations Board (ERB), alleging that respondents State of Oregon, Department of Administrative Services (DAS), Department of Human Services (DHS), and the Home Care Commission (collectively, "respondents") committed an unfair labor practice under ORS 243.672(1)(a) when DHS employees told a home care worker that her pay rate exception would be denied because home care workers had voted for representation by SEIU. ERB determined that an unfair labor practice had been committed and issued a cease and desist order. We review ERB's order pursuant to ORS 183.482(8) for errors of law and reverse.

The Home Care Commission (commission) is an "independent public commission" that was created in 2000 through the initiative process for the purpose of ensuring high quality, comprehensive home care services for the elderly and people with disabilities who receive personal care services in their homes by home care workers.[1] Or Const, Art XV, § 11(1). The commission establishes the qualifications for

---

[1] Article XV, section 11, of the Oregon Constitution provides:

"(1) Ensuring High Quality Home Care Services: Creation and Duties of the Quality Home Care Commission.

"(a) The Home Care Commission is created as an independent public commission consisting of nine members appointed by the Governor.

"(b) The duties and functions of the Home Care Commission include, but are not limited to:

"(A) Ensuring that high quality, comprehensive home care services are provided to the elderly and people with disabilities who receive personal care services in their homes by home care workers hired directly by the client and financed by payments from the State or by payments from a county or other public agency which receives money for that purpose from the State;

"(B) Providing routine, emergency and respite referrals of qualified home care providers to the elderly and people with disabilities who receive personal care services by home care workers hired directly by the client and financed in whole or in part by the State, or by payment from a county or other public agency which receives money for that purpose from the State;

"(C) Provide training opportunities for home care workers, seniors and people with disabilities as consumers of personal care services;

"(D) Establish qualifications for home care workers;

"(E) Establish and maintain a registry of qualified home care workers;

home care workers "with the advice and consent" of DHS, ORS 410.604(1)(a), maintains a registry of qualified home care workers, ORS 410.604(1)(c), and works with area agencies and state and local agencies to accomplish those duties, ORS 410.604(1)(f). DHS determines the eligibility of persons who can receive home care services under Medicaid and state-funded long-term care services, ORS 410.608(3), and, with other public agencies, provides referrals of qualified home care workers who are on the registry maintained by the commission, ORS 410.606.

Home care workers have a unique relationship with the commission and with DHS. Although home care workers are hired directly by their clients, they are paid with public

---

"(F) Cooperate with area agencies on aging and disability services and other local agencies to provide the services described and set forth in this section.

"* * * * *

"(3) Other Provisions—Legal Duties and Responsibilities of the Commission.

"(a) The Home Care Commission shall, in its own name, for the purpose of carrying into effect and promoting its functions, have authority to contract, lease, acquire, hold, own, encumber, insure, sell, replace, deal in and with and dispose of real and personal property.

"(b) When conducting any activities in this Section or in subsection (1) of this section, and in making decisions relating to those activities, the Home Care Commission shall first consider the effect of its activities and its decisions on improving the quality of service delivery and ensuring adequate hours of service are provided to clients who are served by home care workers.

"(c) Clients of home care services retain their right to select the providers of their choice, including family members.

"(d) Employees of the Commission are not employees of the State of Oregon for any purpose.

"(e) Notwithstanding the provisions in paragraph (d) of this subsection, the State of Oregon shall be held responsible for unemployment insurance payments for home care workers.

"(f) For purposes of collective bargaining, the Commission shall be the employer of record of home care workers hired directly by the client and paid by the State, or by a county or other public agency which receives money for that purpose from the State. Home care workers have the right to form, join and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with the Commission on matters concerning employment relations. These rights shall be exercised in accordance with the rights granted to public employees with mediation and interest arbitration as the method of concluding the collective bargaining process. Home care workers shall not have the right to strike.

"(g) The Commission may adopt rules to carry out its functions."

funds by DHS or other agencies administering home care programs. Home care workers are not to be considered employees of the state "for any purposes." Or Const, Art XV, § 11(3)(d), (f); ORS 410.612(2). However, for collective bargaining purposes, the commission is considered to be a public employer and the employer of record for home care workers, Or Const, Art XV, § 11(3)(f); ORS 410.612(1), and home care workers are considered to be "public employees" subject to the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782. ORS 410.614. Consistent with that, home care workers have the right to form, join, and participate in the activities of labor organizations of their own choosing for the purpose of representation and collective bargaining with the commission on matters concerning employment relations. Or Const, Art XV, § 11(3)(f); ORS 410.614.[2] DAS is the commission's representative in collective bargaining with representatives of home care workers and is authorized to agree to terms and conditions of collective bargaining agreements on behalf of the commission and DHS. ORS 410.612(3).

SEIU is a labor organization and the exclusive bargaining unit for home care workers. During the relevant time, SEIU and DAS engaged in negotiations for an initial home care workers' contract and had not yet reached agreement at the time of the hearing.

DHS administers a program called the Community-Based Care Program, through which it authorizes payments to home care workers who are on the registry established by the commission and DHS and who are qualified to provide services to DHS clients on approved in-home service plans. Anthony Rogers receives care through the Community-Based Care Program. He has four caregivers, his wife Colleen Rogers and three part-time home care workers. Until November 2002, Colleen was authorized to be paid approximately $2,783 per month for home care services. Her fee was based in part on an exception to the established rate for providers, because she is a registered nurse and trains other

---

[2] The State of Oregon is responsible for payment of unemployment insurance premiums for home care workers. Or Const, Art XV, § 11(3)(e).

home care workers who provide care for Anthony. The exceptional rate is not automatic but must be requested each year and approved by DHS.

In October 2002, the Rogerses' local DHS caseworker submitted a rate exception request for Anthony's services, requesting the same hourly rates and number of hours that had been approved in prior years. The Rogerses were told by the DHS central office that the exception would be denied, because it had been miscalculated. In conversations with Colleen, DHS employees explained that unionization was the reason for the denial of the rate exception.

In November 2002, Anthony received written notice of a "planned action" from DHS, which stated:

> "Because of unionization for the Providers the pay rate will be between $8.33 & $8.56. This pay is based on set published rate schedules. The spouse pay has been reduced to $1741.75. This change will be effective 12/1/02."

Colleen contacted union personnel, who communicated with DAS's chief negotiator. After investigation, DAS explained that the mention of unionization in the letter was an error.

SEIU filed the complaint in this proceeding, alleging that, when DHS employees told the Rogerses that unionization was the reason for the denial of the exceptional rate, *the commission* interfered with, restrained, or coerced employees in the exercise of rights guaranteed in ORS 243.662, in violation of ORS 243.672(1)(a), which provides:

> "It is an unfair labor practice for *a public employer or its designated representative* to do any of the following:
>
> "(a)  Interfere with, restrain or coerce employees in or because of the exercise of rights guaranteed by ORS 243.662."

(Emphasis added.) ERB found that "[a]t all material times, [DHS] evaluated rate exception requests in the same manner as it had before the home care workers became represented by the Union." ERB concluded, however, that the conduct of DHS employees in informing Colleen that her pay rate exception was being denied because of the unionization of home care workers was a violation of ORS 243.672(1)(a) and that

the commission could be held accountable for that violation because of its unique relationship with DHS. ERB explained that DHS's critical role in the labor relations and employment conditions of home care workers required that DHS's conduct be attributed to the commission:

> "In many important respects of employment for home care workers, DHS stands in for the Commission or acts on the Commission's behalf. To ignore these facts would be to turn a blind eye to reality. The statute gives the home care workers the rights and protections of the PECBA. If we accept the State's argument, we would in effect be agreeing that DHS, despite its control of and connection to critical bargaining subjects, could violate home care workers' PECBA rights with impunity. Such a conclusion would make ORS 410.614 meaningless.

> "Our job in interpreting the statute is to attempt to read its provisions in a way that gives effect to all provisions. To give effect to all provisions of the Home Care Commission statute, we conclude that the Commission, as the employer for PECBA purposes, must be held accountable for actions of DHS, in administering the employment conditions of home care workers."

Thus, ERB concluded, because of DHS's role with home care workers with respect to the conditions of employment and labor relations and DHS's potential effect on the rights of home care workers under PECBA, the commission may be held liable for comments of DHS employees to home care workers.

Respondents assert that ERB's reasoning simply circumvents the requirements of ORS 243.672(1)(a) that an unfair labor practice is committed by "the public employer or its designated representative," because DHS is neither. SEIU concedes that there is no express designation of DHS as a representative for the commission. Rather, it asserts, practical realities of the statutory role of DHS dictate that DHS be treated as a designated representative for purposes of an unfair labor practice, because there is no other way to fully effectuate the rights of home care workers to collectively bargain under PECBA.

Under ORS 243.672(1), an unfair labor practice is committed by "a public employer or its designated representative." In this case, the complaint charges the commission with having committed an unfair labor practice, but it is undisputed that the conduct was committed by DHS employees who administer DHS's Community-Based Care Program. Because DHS is not Colleen's employer, the only basis on which the commission can be responsible for the conduct of the DHS employees is if DHS is the commission's "designated representative."

There is no statutory definition of "designated representative." For purposes of ORS 243.650 to 243.782, ORS 243.650(21) defines a "public employer representative" to include "any individual or individuals specifically designated by the public employer to act in its interests in all matters dealing with employee representation, collective bargaining and related issues." DAS represents the commission in collective bargaining negotiations. ORS 410.612. There is no provision, however, designating DHS as the commission's representative in any capacity, for any purpose.

We note that not even ERB described DHS as a "designated representative" of the commission. Rather, because of DHS's role in determining employment conditions for home care workers, ERB described DHS as "a necessary party in the collective bargaining process" and as "stand[ing] in for the Commission or act[ing] on the Commission's behalf." Determining employment conditions for home care workers may, indeed, be a part of DHS's role in administering the Community-Based Home Care Program. However, there is no statutory or other basis for concluding that DHS carries out that function on behalf of the commission or in a representative capacity. We conclude, accordingly, that DHS is not the commission's designated representative.

Because DHS is not Colleen Rogers's employer or her employer's designated representative, ERB erred in concluding that the commission may be held accountable for unfair labor practices committed by DHS. We recognize the implication of that determination on the ability of home care workers to seek redress for conduct of DHS that might otherwise fall within PECBA's definition of an unfair labor

practice. However, the statutes simply do not permit the characterization of DHS as the commission's designated representative. Because we conclude that the commission may not be held liable for an unfair labor practice committed by DHS, we do not address the state's contention that the DHS employees' conduct was not an unfair labor practice.

Reversed.