Submitted April 29, reversed August 11, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD R. KIMBLE,
*Defendant-Appellant.*

Lane County Circuit Court
210727810B; A139159 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROY WILLIAM BERKNER,
*Defendant-Appellant.*

Lane County Circuit Court
210727810A; A139514

237 P3d 871

Peter Gartlan, Chief Defender, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellants.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

EDMONDS, S. J.

## EDMONDS, S. J.

Defendants appeal convictions for hunting on the enclosed land of another, ORS 498.120, and aiding or sharing in a wildlife violation, ORS 496.695.[1] On appeal, they argue that the land on which they were hunting was not "enclosed" land for purposes of ORS 498.120, and, in the alternative, that the statute is unconstitutionally vague as applied to them under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We reverse because the land upon which defendants were hunting was not "enclosed land" under the statute.

Defendants were charged with offenses related to unlawfully and knowingly hunting on the enclosed land of another without first obtaining permission from the owner or lawful occupant. At trial, the state offered evidence that a group of men, including defendants, had entered onto land owned by Davidson Industries, a logging company, without permission and, while there, killed two elk. At the close of the state's case-in-chief, defendants moved for a judgment of acquittal, arguing that the evidence offered by the state was insufficient to prove that the area in which the elk were killed—a "clear-cut" area—was enclosed as required by the statute and, alternatively, that ORS 498.120 is unconstitutionally vague. Defendants did not contest that they knew when they entered the Davidson property that they were hunting on land without permission of the owner. Rather, they argued:

> "[T]here's been no testimony that this clearcut area that my client[s] [have] allegedly taken part in hunting on, the Davidsons' property, is completely enclosed. This is not a matter where there has been even an attempt to enclose * * *."[2]

---

[1] Specifically, defendant Berkner was convicted of hunting on the enclosed land of another and multiple counts of aiding or sharing in a wildlife violation. Defendant Kimble was convicted only on counts of aiding or sharing in a wildlife violation. The convictions pursuant to ORS 496.695 were based on defendants having aided or assisted another in violation of ORS 498.120. The validity of those convictions depends on whether ORS 498.120 was violated. Given our resolution of that issue, defendants' other convictions must also be reversed.

[2] Defendants further explained:

> "This is not a situation where it is any different from defense standpoint of having a corral for horses, and having two sets of rails or three sets of rails on

Defendants also pointed out that there was a "gap" in the purported clear-cut lines where power lines were running. That gap, in defendants' view, further undermined any argument that the land was "enclosed."

■     The state, in response, argued that the land in question was indeed set apart—and therefore "enclosed"—by the timber lines created by the clear-cut:

"Everything is clearcut. * * * Very distinctively different from the property that is beyond Davidson to the west.

"Yes, there is a gap where the power line runs through, but it's also obvious that the power line is continuing to run through, and that as soon as that—on the other side of the power line, that property boundary, that change into timberland, changes at the same level as it did before the power lines.

"And on the north side it's the same story. There's a very clear, distinctive change in property from the clearcut land into the U.S. Forest Service property timber.

"And again on the east, looking back, very clear as it goes into Rosboro.

"And I think based on that there is evidence that this is an enclosed property."

The trial court ultimately ruled that the question was one for the jury:

"I think the land does need to be enclosed by boundaries. But the boundaries have to be either visible, which the statute says, or they have to be distinctive, which the statute also says. And a reasonable person, such as a juror, will have to determine whether there's a boundary or not.

"And I think that the statute leaves that up to the reasonableness of the trier of fact to determine whether there's a boundary or not. I think the defendants' arguments are that it's—for the reasons that they've suggested here, that it's not reasonable where there's not anything indicated by

one side that are open. It is not enclosed as it is defined unless it is complete. You can't have three sides to make it enclosed. You can't have three sides and two feet on the fourth side, if it is a square or a rectangle, and it had—and it be enclosed. It simply is not enclosed unless it is complete, or at least there is the intent to complete it."

a distinctive line, if the jury concludes there isn't. That a reasonable person would have to be put on notice that they were crossing a boundary.

"And the State is free to argue that a reasonable person coming onto this land at any point, it would be unreasonable for them not to conclude that they are coming onto a distinct—a piece of land that was separate and distinct from the surrounding or contiguous territory.

"So the motion for judgment of acquittal is denied."

On appeal, defendants reiterate their arguments that they were entitled to judgments of acquittal. According to defendants, "the state failed to offer sufficient evidence to prove the land was enclosed for two reasons: (1) the property was not *entirely* surrounded by boundaries and/or (2) clear-cut lines do not constitute boundaries" for purposes of "enclosing" land.[3] (Emphasis added.) The state, for its part, continues to argue that the land on which defendants hunted was "enclosed by a visible and distinct clear-cut line that indicated a separation from the surrounding territory."

The parties' arguments on appeal frame issues of statutory interpretation. At the onset of our discussion, it is important to note that defendants do not challenge the fact that they knowingly hunted on the land of another. Rather, their argument focuses on a different issue: whether the state proved that the land on which they were hunting was "enclosed" land for purposes of ORS 498.120.

---

[3] Defendants explain that,

"in order for something to be 'enclosed,' it must be *surrounded* by something. Under the statute, the land must be *surrounded* by boundaries. Here, the Davidson tract was not surrounded by boundaries [of trees and vegetation on the Bonneville Power Easement].

"The undisputed evidence was that the clearcut lines proffered by the state as constituting the eastern and western boundaries of the Davidson tract were interrupted by two approximately 200 foot sections of trees and vegetation on the Bonneville Power easement. Furthermore, there was an area of the clearing that continued onto United States Forest Service property from the northwest corner of the Davidson property, as well as unlogged areas of land in the southwest and southeast corners of the Davidson property that contained trees and other large vegetation."

(Transcript references omitted; emphasis in original.)

That question is one of legislative intention—namely, what the legislature contemplated when it used the word "enclosed" in the statute. As with any issue involving statutory interpretation, our task is to discern the intent of the legislature. We initially seek to determine the intent of the legislature in regard to ORS 498.120 by resorting to an examination of its text and context as well as any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 498.120 provides:

"(1)  No person shall hunt upon the cultivated or enclosed land of another without first obtaining permission from the owner or lawful occupant thereof, or the agent of such owner or occupant. No prosecution shall be commenced under this section except upon written complaint filed with a magistrate. The complaint shall be verified by the oath of the owner or lawful occupant of the cultivated or enclosed land, or the agent of such owner or occupant.

"(2)  For the purpose of subsection (1) of this section, the boundaries of 'enclosed' land may be indicated by wire, ditch, hedge, fence, water or by any visible or distinctive lines that indicate a separation from the surrounding or contiguous territory, and includes the established and posted boundaries of Indian reservations established by treaties of the United States and the various Indian tribes."

The term "enclosed lands" is not expressly defined in ORS 498.120 or in any related statutory provision. However, subsection (2) provides examples of how the boundaries of "enclosed land" for purposes of subsection (1) may be indicated for purposes of the statute. The common requirement among those examples is that the boundaries must be manifested by "any visible or distinctive lines that indicate a separation from the surrounding or contiguous territory[.]" ORS 498.120(2).

■      When the legislature has not provided an express definition for a particular term, we generally look to the term's plain and ordinary meaning. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). With respect to ORS 498.120, the statute's antecedent was enacted in 1921. *See* General Laws of Oregon, ch 153, § 31

(1921). Subsection (2) of the statute was added in 1973. *See* Or Laws 1973, ch 723, § 83. We initially consider definitions of the term "enclose" from dictionaries that are roughly contemporaneous to the 1921 enactment of what became ORS 498.120. For example, *Webster's New Int'l Dictionary* 1088 (1910) defines the word "inclose" as "[t]o surround; to encompass; to bound, fence, or hem in on all sides; as, a lake *inclosed* by hills, a town by walls" and "to fence off or in (common land) in order to appropriate it to individual use." The same definitions appear in *Webster's New Int'l Dictionary* 1088 (1926). Those definitions comport with usage from a century earlier and decades later. *See, e.g.*, Noah Webster, 1 *An American Dictionary of the English Language* 107 (1828) (defining "inclose" as "[t]o surround; to shut in; to confine on all sides" and "[t]o separate from the common grounds by a fence; as, to *inclose* lands"); *Black's Law Dictionary* 607, 955 (9th ed 2009) (defining "enclose" as "to surround or to encompass; to fence or hem in on all sides" and "enclosed land" as "[l]and that is actually enclosed and surrounded with fences").

The ordinary definitions of "enclosed land" in the statute were expanded by the 1973 amendment to the statute. Although the ordinary definition of "enclosed" might suggest a requirement that, to be enclosed, land must be fenced, subsection (2) of the statute manifests the legislature's intention that land can become "enclosed" when it is surrounded by types of boundaries other than a fence, including hedges, ditches, or water. Indeed, the statute specifically provides that boundaries may be indicated by "*any* visible or distinctive line" that shows that the "enclosed land" is separate from the surrounding or contiguous territory. ORS 498.120(2) (emphasis added). Thus, in light of the language of the statute, the question is not whether the land in question is encircled by a boundary line *fence* but, instead, whether it is surrounded by any kind of visible or distinctive line that demonstrates its separation from contiguous properties.[4]

■      Here, the state contends that the clear-cut lines on the Davidson property constitute a boundary for purposes of

[4] For example, "No Trespassing or Hunting" signs prominently displayed at intervals could operate to delineate an "invisible" but nevertheless distinctive boundary line in an area where a boundary line fence had not been erected.

ORS 498.120. We disagree. To be enclosed, the land was required to have a boundary that marked it as separate from—in other words, not a part of—the lands surrounding it. Although it is true that land that is clear-cut has different characteristics than land that remains forested, that distinction is not necessarily one that serves to show that the clear-cut land is separate from surrounding property. To be sure, the statute appears to contemplate circumstances where a hunter enters onto the unenclosed land of another without the permission of the owner and then encounters an agricultural area or an area enclosed by visible or distinctive boundary lines marking it as separate. A person who nonetheless enters and hunts on such lands would be subject to the penalties available under the statute. However, subsection (2) requires that the boundary indicators of "enclosed land," whatever their nature, somehow delineate the confines of that land. Contrary to the state's contention, in this case, there is no evidence that the clear-cut lines serve that purpose and, for that reason, they cannot constitute a boundary for purposes of the statute.

In light of the foregoing, as a matter of law, the Davidson property was unenclosed land and the trial court erred in denying defendants' motion for judgment of acquittal.[5]

Reversed.

---

[5] In light of that conclusion, we need not reach defendants' constitutional argument.