Submitted July 31, 2013, affirmed April 23, petition for review denied September 11, 2014 (356 Or 163)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TIM WAYNE FOX,
*Defendant-Appellant.*

Linn County Circuit Court
10040604; A148110

324 P3d 608

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Tim Wayne Fox filed the supplemental brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

Defendant appeals two of his convictions for sex-crimes he committed while he was a recruiter for the Oregon Army National Guard.[1] One of his convictions was for attempted first-degree sexual abuse under ORS 163.427 (1)(a)(B), which applies only when the perpetrator uses "forcible compulsion." On appeal, defendant argues that, on the undisputed facts, the state did not prove that element. Another conviction was for coercion under ORS 163.275(1)(g), which applies only when a "public servant" unlawfully coerces a victim. Defendant contends that, as used in that statute, the term "public servant" means only a public servant who works for the state or a local governmental unit, and there is no evidence that the Oregon Army National Guard is such an entity. He also argues that, if he was a public servant, then the court erred in enhancing his sentence on the basis of the "violation of public trust" factor, OAR 213-008-0002(1)(b)(F), because that enhancement factor was already captured by the "public servant" element of the coercion crime. We conclude that the state presented evidence sufficient to establish that defendant attempted to use forcible compulsion; that he was a public servant for purposes of the coercion statute; and that, although the court erred in applying the "violation of public trust" enhancement factor, that error was harmless, because defendant was also sentenced to a concurrent term for a conviction that he does not appeal. We therefore affirm.

## I. FACTS

The facts, which we relate in the light most favorable to the state because a jury returned guilty verdicts, *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008), are as follows. R encountered defendant in 2010 when she was applying to join the Oregon Army National Guard and met with defendant several times to fill out paperwork. During one of those meetings, defendant asked R about her sexual history. Although the questions made her uncomfortable, R answered them because

---

[1] Defendant was charged with 10 counts involving two women. Four counts were subsequently dismissed. Of the remaining six counts, he challenges his convictions on only two, both of which involve the same victim.

she believed that they were part of a standard recruitment questionnaire. Defendant then asked R if she would like a National Guard t-shirt. She said that she would, and defendant led her into a storage room. Once they were alone, defendant put his leg up on a box, motioned towards his genitals, and asked R how "adventurous" she was. She then tried to leave the room, but defendant stepped in front of her. Defendant then exposed himself, grabbed R's arm "very aggressively," and attempted to make her touch his penis. R was able to break his grip and leave the storage room.

Defendant caught up to R in the drill hall and again blocked her exit. He told her that she could not leave unless she showed him her breasts. At that point, R became "frightened." She lifted her shirt and defendant grabbed her breasts. R then pulled her shirt back down and began to walk away, intending to leave the building. Defendant, however, told her that she needed to sign more papers. She followed defendant back to his office and finished signing the papers. While she was in his office, defendant closed the door and again asked R to show him her breasts. R did so and then left the office. R's arm developed bruises where defendant had grabbed her.

R discussed what had happened with a friend but did not immediately report defendant because she was concerned that doing so might affect her chances of joining the guard. R returned to the armory every day for the rest of the week to work out in the gym and to fill out more paperwork, but she always brought friends because she was afraid of defendant. Nevertheless, at one point, R had to go into defendant's office to fill out documents related to her "family care plan." When they were alone, defendant again asked to see R's breasts. R declined and left the room. The day after that incident, R reported it to the Linn County Sheriff's Office, and defendant was subsequently arrested.

## II.   ANALYSIS

After a jury trial, defendant was convicted of, among other offenses, one count of attempted first-degree sexual abuse, ORS 163.427(1)(a)(B), and one count of coercion, ORS 163.275(1)(g). On appeal, defendant assigns error

to five rulings, three of which merit discussion.[2] First, defendant assigns error to the denial of his motion for judgment of acquittal (MJOA) on the charge of first-degree attempted sexual abuse, arguing that the state failed to establish that his action involved forcible compulsion. Second, he argues that the trial court erred by denying his MJOA on the charge of coercion by a public servant. According to defendant, a "public servant" is a person who works for the state or for a local governmental entity. Third, defendant argues that the trial court erred by imposing an upward departure sentence for his conviction of coercion by a public servant because the factor that the court used for the enhancement was also an element of the underlying crime. We address those arguments in turn.

## A.  Forcible compulsion

Defendant was convicted of attempted first-degree sexual abuse on the theory that he tried "to cause [R] to touch defendant's penis by means of forcible compulsion[.]"[3] On appeal, he argues that the court erred in denying his MJOA on that count.[4] For the following reason, we reject that argument.

To use forcible compulsion is to "compel by * * * [p]hysical force." ORS 163.305(2). A person is guilty of the attempted version of a crime when that person "intentionally

---

[2] In two of his assignments of error, defendant argues that the court erred by imposing upward departure sentences without the state having pleaded the enhancement factors in the indictment or submitting them to the grand jury. After this case was briefed and argued, the Supreme Court rejected the identical argument, *State v. Reinke*, 354 Or 98, 309 P3d 1059, *adh'd to as modified on recons*, 354 Or 570, 316 P3d 286 (2013), and we reject it again without discussion.

[3] ORS 163.427 provides, in part,

"(1) A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"* * * * *

"(B) The victim is subjected to forcible compulsion by the actor[.]"

[4] We review the denial of an MJOA to determine whether, after viewing the facts and the inferences that can reasonably be drawn from them in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Bilsborrow*, 230 Or App 413, 415, 215 P3d 914 (2009).

engages in conduct which constitutes a substantial step towards commission of the crime." ORS 161.405(1).

On appeal, defendant relies on *State v. Marshall*, 350 Or 208, 253 P3d 1017 (2011), in which the Supreme Court explained what the state must prove in order to obtain a conviction for the *completed* crime of first-degree sexual abuse based on a forcible compulsion theory. As the court explained,

> "when the state elects to prove the 'forcible compulsion' element of a charge of first-degree sexual abuse by evidence of physical force, it must show that the physical force that the defendant used was greater in degree or different in kind from the simple movement and contact that is inherent in the act of touching the intimate part of another and that the force was sufficient to compel the victim to submit to or engage in the sexual contact, against the victim's will."

*Id.* at 227. Citing that standard, defendant, while apparently conceding that he used an amount of force that was greater than the normal movement inherent in noncriminal sexual acts, argues that the force he used could not have been sufficient to compel R to submit to sexual contact because there was no sexual contact. Defendant's argument, however, ignores the fact that he was convicted of *attempted* first-degree sexual abuse. Thus, the state was required to prove only that defendant took a "substantial step" towards forcibly compelling R to engage in sexual contact. To constitute a "substantial step" towards the commission of a charged offense, a defendant's conduct must "(1) advance the criminal purpose charged and (2) provide some verification of the existence of that purpose." *State v. Walters*, 311 Or 80, 85, 804 P2d 1164, *cert den*, 501 US 1209 (1991). Here, the record establishes that defendant exposed his penis, stepped in front of R, and "very aggressively" grabbed her with enough force to leave bruises on her arm. Moreover, R testified that she had to use a martial arts technique in order to avoid touching defendant's penis. That is evidence from which a rational trier of fact could conclude that defendant's purpose was to forcibly compel R to touch his penis and that he took steps to advance that purpose, using force that was "greater in degree * * * from the simple movement and contact that is

inherent in the act of touching the intimate part of another." *Marshall,* 350 Or at 227.

B. *"Public servant"*

ORS 163.275 provides, in part:

"(1) A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain *** by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will:

"*****

"(g) Unlawfully use or abuse *the person's position as a public servant* by performing some act within or related to official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely."

(Emphasis added.) On appeal, defendant argues that the state failed to establish that he was a "public servant." That is so, argues defendant, because the definition of "public servant" encompasses only individuals who are connected with the state or local governmental entities. His argument is elaborate. He relies not on the text of the coercion statute, which does not define "public servant," but on a definition of that term in what he refers to as a related statute: ORS 162.005(2), which defines "public servant" for the purposes of ORS chapter 162 ("Offenses Against the State and Public Justice"). That definition provides in part:

"'Public servant' means:

"(a) A public official as defined in ORS 244.020;

"(b) A person serving as an advisor, consultant or assistant at the request or direction of the state, any political subdivision thereof or of any governmental instrumentality within the state[.]"

ORS 244.020(14), in turn, provides:

"'Public official' means any person who, when an alleged violation of this chapter occurs, is serving the State of Oregon or any of its political subdivisions or any other public body as defined in ORS 174.109 [(*i.e.,* state government

bodies, local government bodies and special government bodies)] as an elected official, appointed official, employee or agent, irrespective of whether the person is compensated for the services."

Defendant argues that ORS 162.005(2)(a) does not encompass federal employees, because all of the persons listed in that subparagraph must be either "serving the State of Oregon" or serving a public body as defined in ORS 174.109, *i.e.*, "state government bodies, local government bodies and special government bodies." ORS 162.005(b), which may include federal employees by referring to "any governmental instrumentality within the state[,]" does not apply to him, he contends, because he was not an "advisor, consultant or assistant." Thus, according to defendant, because his position as a recruiter for the Oregon National Guard was arguably a federal government position, he was not affiliated with the state or any local government, so he was not a "public servant" for purposes of the "coercion by a public servant" statute, and the court should have granted his MJOA on that charge.

We are not persuaded. Defendant's argument requires us to determine the meaning of the statutory term "public servant." Our goal in statutory interpretation is to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). The best evidence of legislative intent is the text of the statute itself. *Id.* When the legislature has not defined a term, we give that term its ordinary meaning. *State v. Kimble/Berkner*, 236 Or App 613, 618, 237 P3d 871 (2010). Nothing in ordinary usage of the term "public servant" provides any support for the contention that it encompasses only state and local officers; in normal discourse, in other words, a public servant is a public servant regardless of the level or branch of government in which he or she serves.

Nor are we persuaded by defendant's argument based on the definition in the supposedly related statute, ORS 162.005. That argument is premised on the maxim that Oregon courts "ordinarily assume that the legislature uses terms in *related statutes* consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011) (emphasis added). In *Cloutier*, the Supreme Court was tasked with interpreting

the meaning of the phrase "the maximum allowable by law" as it appears in ORS 138.050. *Id.* at 70. The court noted that ORS 138.050 is "but a part of a larger statutory scheme" and turned to "related sentencing statutes" for guidance. *Id.* at 75-76. ORS 162.005 and ORS 163.275 are *not* part of the same "larger statutory scheme." *Id.* at 75. Although both are criminal statutes, they come from two different chapters of the criminal code and address different categories of harms. ORS 162.005 expressly states that the definition applies only "[a]s used in ORS 162.005 to 162.425, unless the context requires otherwise[.]" *See Enertrol Power Monitoring Corp. v. State of Oregon*, 314 Or 78, 84, 836 P2d 123 (1992) ("The legislature's definition of a term made applicable to one portion of the statutes does not control on the meaning of the term in another portion of the statutes."). Nothing in the coercion statute "requires" application of a definition from ORS 162.005 or even suggests that such application is appropriate.

To the contrary, the two statutes have significantly *different* contexts. ORS 162.005(2)(a) appears in the context of statutes pertaining to government ethics and public integrity and was enacted in its present form with an omnibus bill dealing with the Oregon Government Ethics Commission. *See* HB 2595 (2007) (Relating clause: "Relating to government ethics[.]"). In that context, it makes sense to limit the applicability of the definition of "public servant" to state actors; the ethical conduct of federal actors is generally regulated by federal authorities. On the other hand, the coercion statute focuses on the harm inflicted by persons in positions of public authority who threaten to use that position to coerce an individual, and the harm does not vary according to which public office gives force to the threat.

In any event, even if ORS 162.005(2)(a) were a statute whose definition section could shed light on what the legislature intended when using the term "public servant" in ORS 163.275, that does not support defendant's theory. As the state explains (and we concur),

"ORS 162.005(2)(a) * * * was enacted *after* the enactment of ORS 163.275, the coercion statute. Statutory provisions that did not exist at the time are not relevant context in the determination of what the legislature intended when it

enacted a statute. *Stull v. Hoke,* 326 Or 72, 79-80, 948 P2d 722 (1997). ORS 163.275, defining ['public servant' for purposes of] coercion, and ORS 162.005, defining 'public servant' for purposes of Chapter 162, both were enacted in 1971. Or Laws 1971, ch 743, §§102, 178. But ORS 162.005(2)(a), on which defendant relies, was revised in 2007. Or Laws 2007, ch 865, § 22. That later revision tells us nothing about what the legislature intended when it included the phrase 'public servant' in the coercion statute in 1971. In fact, the original version, enacted at the same time as ORS 163.275, did not exclude federal officials from the definition of 'public servant.'

"Before it was revised in 2007, \* \* \* ORS 162.005(2)(a) (2005), defined a public servant as a 'public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state[.] \* \* \*" Accordingly, if this court were to look to ORS 162.005(2)(a) as context for defining 'public servant' for purposes of the coercion statute, the relevant contextual evidence for the legislature's intent is that contained in the original version, not in the 2007 version. *See Holcomb v. Sunderland,* 321 Or 99, 105, 894 P2d 457 (1995) ('The proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events.'). Under the 1971 definition, defendant \* \* \* was clearly an employee of a 'governmental instrumentality within the state,' \* \* \* regardless of whether he was employed by the state or federal government."

(Emphasis in original.)

As the state points out, the definition of "public servant" in the original version of ORS 162.005(2)(a) did not define the term so as to include individuals connected with state governmental entities while excluding those who are connected to the federal government. As originally drafted by the Oregon Criminal Law Revision Commission and passed by the legislature, the definition section for what would become ORS chapter 162 stated, in part,

"'Public servant' *includes*:

"(a)   A public officer or employee of the state or of any political subdivision thereof or of any governmental instrumentality within the state;

> "(b) A person serving as an advisor, consultant or assistant at the request or direction of the state, any political subdivision thereof or of any governmental instrumentality within the state[.]"

ORS 162.005(2) (1971) (emphasis added). In the 2007 amendment, ORS 162.005 changed from defining "public servant" in terms of what that phrase "includes" to defining "public servant" in terms of what that phrase "means." Generally, the legislature intends something quite different when it says a particular statutory term "means" something as opposed to when it says that a term "includes" something. "'Means' is used in the definition if the definition restricts or limits the meaning of a word. 'Includes' is used if the definition extends the meaning." Office of Legislative Counsel, *Bill Drafting Manual* § 7.2 (2012); *accord Edwards v. Riverdale School District*, 220 Or App 509, 514-15, 188 P3d 317 (2008), *rev dismissed*, 346 Or 66 (2009). As in *Edwards*, the legislature's use of the term "includes" in ORS 162.005 (1971) is evidence that it intended the enumerated examples to be open-ended rather than exclusive.

Because ORS 162.005 (1971) does not help explain what the term "public servant" means, we apply the ordinary definition of the term. *Webster's* defines "public servant" as either "a holder of public office" or "an individual or corporation * * * rendering a public service." *Webster's Third New Int'l Dictionary* 1836 (unabridged ed 2002). As relevant here, "public service" includes "a service rendered in the public interest" and alternatively "governmental employment." *Id.* There was evidence in the record that, by virtue of his position as a recruiter for the Oregon National Guard, defendant qualified as a public servant. The record indicates that defendant is an individual who provides a public service both because he assists members of the public, including R, who are seeking to enlist in the Oregon National Guard and because he is undisputedly a government employee. The trial court did not err by denying defendant's MJOA on Count 3.

C. *Use of an element of the crime as a sentence aggravating factor*

Finally, defendant argues that the court erred in imposing an upward departure sentence based on the

finding that defendant's offense "involved a violation of public trust." OAR 213-008-0002(1)(b)(F). Defendant argues that, under OAR 213-008-0002(2), a factual circumstance that constitutes an element of an offense can only be used as an aggravating factor if "the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime." The state concedes that "defendant appears to be correct[,]" and we agree. We conclude, however, that the error was harmless.

OAR 213-008-0002 governs departures from the sentencing guidelines and provides a nonexclusive list of mitigating and aggravating factors, including that "[t]he offense involved a violation of public trust or professional responsibility." However, OAR 213-008-0002(2) provides:

> "If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the Crime Seriousness Scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only *if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime.*"

(Emphasis added.) Here, Count 3 charged defendant with coercion on the theory that he

> "did unlawfully and intentionally compel or induce [R] to engage in conduct in which [R] had a legal right to abstain from engaging in, by means of instilling in [R] a fear that if [R] refrained from the conduct or engaged in the conduct contrary to the compulsion or inducement, the said defendant would unlawfully use or abuse the said defendant's position as a public servant by performing some act within or related to official duties, or by failing or refusing to perform an official duty in such a manner as to affect some person adversely[.]"

Thus, one of the factual aspects of that crime also constitutes a violation of the public trust and of standards of professional responsibility. Therefore, OAR 213-008-0002(2) requires a finding that defendant's criminal conduct was "significantly different" from the usual criminal conduct that constitutes coercion through the use or abuse of a person's position as a

public servant. As the state rightly concedes, "[t]he jury did not make such a finding here."

Nevertheless, that error was harmless, because it did not affect defendant's actual period of imprisonment. That is so because the sentence imposed for coercion is wholly concurrent with the sentence imposed for a count from which he does not appeal. *See State v. Tremillion*, 111 Or App 375, 376, 826 P2d 95, *rev den*, 313 Or 300 (1992) (no remedial action is required when an erroneous sentence is imposed concurrently with a legally permissible sentence and "cannot affect defendant's actual period of imprisonment").

## III. CONCLUSION

In sum, we hold that defendant used forcible compulsion in his attempt to sexually abuse R; that he was a "public servant" when he coerced R; and that, although the trial court erred in imposing an upward departure sentence on the coercion count, that error was harmless.

Affirmed.